```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

<u>Ethan Samuel Debaker</u>

    v.                              Civil No. 19-cv-107-JL
                                        Opinion No. 2019 DNH 137

<u>Commissioner of the</u>
<u>U.S. Social Security Administration</u>

**<u>ORDER ON APPEAL</u>**

Ethan Samuel Debaker has moved to reverse the Social Security Administration's ("SSA") decision to deny his application for a period of disability and disability insurance benefits. An administrative law judge ("ALJ") at SSA found that Debaker, despite severe impairments, retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to certain limitations, and thus is not disabled as defined by the Social Security regulations.[1] <u>See</u> 20 C.F.R. § 404.1505(a). This decision was affirmed by the Appeals Council and thus became the final decision on his application. <u>See</u> id. § 404.981. Debaker then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

On appeal, Debaker asserts that the ALJ erred in finding that his impairments did not meet or clear required severity

---

[1] Pl. Mot. for Order Reversing Decision (doc. no 7).

thresholds.  See LR 9.1(b).  The SSA Commissioner disagrees and has cross-moved for an order affirming the ALJ's decision.[2]  See LR 9.1(e).  After careful consideration, the court denies Debaker's motion to reverse and grants the Commissioner's cross-motion to affirm the SSA's final decision.

I.  **Background**

In April 2018, an ALJ followed the established five-step sequential evaluation process, see 20 C.F.R. § 404.1520, and found that Debaker is not disabled under section 216(i) and 223(d) of the Social Security Act.  At step 1, she found that Debaker had not engaged in substantial gainful activity since January 12, 2017.[3]  At step 2, she found that Debaker had four severe impairments that significantly limit the ability to perform basic work activities – a speech and language impairment, an unspecified anxiety disorder, attention-deficit hyperactivity disorder ("ADHD"), and a learning disorder.[4]

At step 3, the ALJ found that Debaker's mental impairments, considered both individually and in combination, did not meet or medically equal the severity criteria of an impairment listed in

---

[2] Doc. no. 8.

[3] Admin. R. at 15.

[4] Id.

20 C.F.R. Part 404, Subpart P, Appendix 1.[5] In making this determination, she applied the familiar "Paragraph B" criteria and found that Debaker had (1) moderate limitations in understanding, remembering, or applying information; (2) mild limitations in interacting with others; (3) moderate limitations in concentrating, persisting, or maintaining pace; and (4) mild limitations in adapting or managing himself.[6] She then found, on the entire record, that Debaker retains the residual functional capacity "to perform a full range of work at all exertional levels," subject to the limitations that he do no more than "uncomplicated tasks" i.e. tasks learnable within 30 days and have access to repeated verbal and written instruction during the learning phase.[7] In reaching this RFC, the ALJ found that although Debaker's symptoms could reasonably be expected to cause his alleged symptoms, the statements concerning the intensity, persistence, and limiting effects of his symptoms were not supported by (and were in conflict with) objective medical and non-medical evidence in the record, including his educational records, neuropsychological evaluations, mental status exams, the expert opinion of the state agent medical

---

[5] Id. at 15-20.

[6] Id. at 17-18.

[7] Id. at 17.

3

consultant – JoAnne Coyle, PhD, and reports about Debaker's aptitude, interest, and daily activities.[8]

At step 4, the ALJ found that Debaker had no past relevant work.[9] At step 5, she found, based on the testimony of a vocational expert, that Debaker, given his age, education, work experience, and residual functional capacity, can perform jobs that exist in significant numbers in the national economy, including dishwasher, laundry laborer, package sorter, and laundry sorter.[10] Under this framework, the ALJ concluded that a finding of "not disabled" was appropriate.

## II. Applicable legal standard

In reviewing a challenge of a final determination by the SSA, the court "defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000), that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). "[I]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the

---

[8] Id. at 19-20.

[9] Id. at 21-22.

[10] Id. at 21.

4

[Commissioner]." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (per curiam). Additionally, "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts." Id. (internal quotation marks omitted). Reversal is warranted only if the ALJ committed a legal or factual error in evaluating plaintiff's claim, see Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)), or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ. Roman–Roman v. Comm'r of Soc. Sec., 114 Fed. Appx. 410, 411 (1st Cir. 2004).

### III. Analysis

Debaker's appeal primarily focuses on the ALJ's determination that his impairments did not meet or equal the requirements of Listings 12.05 and 12.11 – a determination that Debaker asserts was made in error. These Listings both require:

> B. [An] Extreme limitation of one, or [a] marked limitation[11] of two, of the following areas of mental functioning:

---

[11] A "marked limitation" means that claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. part 404, subpart P, App. 1 § 12.00(F)(2)(d).

5

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

20 C.F.R part 404, subpart P, App. 1 § 12.04(B) and 12.06(B). Debaker contends that the ALJ's decision was not supported by substantial evidence and has identified 11 factual findings that he contends were made in error.

The Commissioner disagrees and notes that it was Debaker's burden — not the ALJ's – to establish that his impairments actually met or equaled the Listing 12.05 or 12.11 requirements, but at the proceedings below, he submitted no medical opinion to support his claim.[12] The Commissioner further contends that, in any case, the ALJ's decision was supported by substantial evidence and that each of Debaker's eleven arguments is incorrect.[13] The court agrees that none of Debaker's claims warrant reversal or remand of this case.

As an initial matter, the court disregards the perfunctory or underdeveloped arguments raised in Debaker's motion. It is well settled in the First Circuit that litigants may not merely "mention a possible argument in the most skeletal way, leaving

---

[12] Def. Mot. to Affirm Mem. (doc. no. 8-1) at 3-4.

[13] Id. at 4-11.

the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). "[A] litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (quoting Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir.1988)). Debaker's first, second, fifth, and eighth arguments on appeal do not clear this minimal hurdle. These arguments merely consist of quotes of discrete sentences from the ALJ's decision without any further analysis. In addition, they do not cite any conflicting record evidence from which the court could surmise the factual basis for an appellate challenge. These perfunctory arguments are therefore denied as insufficiently developed.

After deeming such arguments waived, the court turns to Debaker's surviving arguments and finds that they fail to establish that the ALJ's decision warrants reversal or remand. These arguments similarly quote discrete sentences from the ALJ's decision, urging the court to find some error. But unlike Debaker's undeveloped arguments, his surviving arguments provide some additional analysis. The court therefore addresses each of these arguments below, beginning with what Debaker contends is the ALJ's third erroneous finding of fact.

For his third issue, Debaker challenges the ALJ's finding that his "benign mental status results suggest few significant obstacles to understanding and learning terms, instructions, and procedures"[14] because the ALJ relied on Debaker's office treatment records, but did not reference his educational records, which included additional comprehensive cognitive testing.[15] Debaker does not say how these "unreferenced" records would add or subtract from the ALJ's analysis. Regardless, the ALJ did reference Debaker's cognitive tests elsewhere in her decision,[16] and also gave significant weight to the state agency medical consultant's opinion, which also referenced these tests.[17] The fact that the ALJ did not directly refer to these records to support this particular finding does not suggest that the records were not considered and does not constitute an error warranting remand. See also N.L.R.B. v. Beverly Enterprises-Massachusetts, 174 F.3d 13, 26 (1st Cir. 1999) (explaining that

---

[14] Admin. R. at 16.

[15] Pl. Mot. to Reverse Mem. (doc. no. 7-2) at 7.

[16] See Admin. R. at 18 ("Educational records document that the claimant's cognitive function, while diminished, is not so functionally limiting, that he would be unable to work. . . . [(further discussing test scores)]").

[17] See id. at 69; see also id. at 19 (giving opinion "significant weight because the medical evidence of record supports the limitations she assessed and were consistent with and supported by the objective clinical findings discussed within" the ALJ's decision).

8

an "ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party").

Fourth, Debaker contends that the ALJ erred in finding that "as of January 2017 [he] was participating in all classes without paraprofessional support" because his mother testified, and his speech pathologist noted, that he did utilize such support.[18] This finding does not constitute a reversible error because the ALJ's decision was reasonably supported. See Irlanda Ortiz, 955 F.2d at 769. To support her finding, the ALJ cited Debaker's educational records, which clearly note that as of March 2017, he "participate[d] in all classes with no paraprofessional support."[19] Even though Debaker's mother testified that Debaker used paraprofessional support throughout high school, the ALJ explained that he gave less weight to such testimony, given doubts about the mother's objectivity and because the testimony conflicted with objective record evidence.[20] Further, the ALJ's finding did not conflict with the

---

[18] Pl. Mot. to Reverse Mem. (doc. no. 7-2) at 7 (quoting Admin. R. at 16).

[19] Admin. R. at 375.

[20] Admin. R. at 20. As discussed below, the ALJ committed no reversible error by giving little weight to a family member's "hardly neutral" testimony. See Tremblay v. Sec'y of Health and Human Servs., 676 F.2d 11, 13 (1st Cir. 1982). And even if the ALJ gave improper weight to the mother's testimony, it is the

9

speech pathologist's evaluation because the pathologist made observations about Debaker's education based on records that predated the more recent educational records cited by the ALJ.[21]

Fifth, Debaker merely notes that despite the ALJ's finding that "[h]is IQ was in the low average range with strong verbal comprehension skills," an evaluator "also noted that he had extreme deficits in other areas."[22] As discussed above, the court denies this perfunctory argument as insufficiently developed. And even if the court considered this argument, it would not be meritorious, as the ALJ was not required to discuss all of Debaker's test scores. See Beverly Enterprises-Massachusetts, 174 F.3d at 26.

Sixth, Debaker asserts that the ALJ erred by not explaining how his aptitude test results supported her finding that he has "no more than moderate restrictions in understanding, remembering, or applying information."[23] The court disagrees. Debaker's aptitude profile served as support for several findings underlying the ALJ's determination regarding his

---

ALJ's province to resolve conflicts between that testimony and other evidence in the record. See Rodriguez, 647 F.2d at 222.

[21] See Admin. R. at 375.

[22] Pl. Mot. to Reverse Mem. (doc. no. 7-2) at 4 (quoting Admin. R. at 16).

[23] Pl. Mot. to Reverse Mem. (doc. no. 7-2) at 4 (quoting Admin. R. at 16).

limitations in this area, including the findings that his "cognitive functioning is intact with little evidence of significant learning, memory, or generalized information processing deficits" and that his "I.Q. was in the low average range with strong verbal comprehension skills."[24] In any case, even if the court disregarded Debaker's aptitude profile, Dr. Coyle's medical opinion would still support the ALJ's finding of moderate limitations. Dr. Coyle similarly concluded that Debaker has moderate limitations in understanding, remembering, and applying information. As such, the ALJ's "moderate limitations" finding would remain supported by substantial evidence in the record.

Seventh, Debaker contends that the ALJ did not have adequate record support to find that he has a mild limitation in interacting with others.[25] The ALJ supported this finding by citing the office treatment notes of Debaker's counselor. Debaker asserts that this was inadequate, as "[t]here is simply no comparison between the limited (visits average 15-20 minutes) supportive environment of a counselor's office and a full-time competitive work environment."[26] This may well be true. In a

---

[24] Admin. R. at 16.

[25] Pl. Mot. to Reverse Mem. (doc. no. 7-2) at 4-5 (quoting Admin. R. at 16).

[26] Id. at 16.

11

similar vein, the nature of judicial review typically grants judges a limited perspective into a claimant's full experience. But Debaker points to no other evidence in the record suggesting that his behavior during these visits did not represent his expected performance in an actual work environment.  In contrast, the record contains several examples where Debaker related well to his medical providers.[27] These examples are probative as to his ability to interact with others.  See [Raymond v. Colvin, No. 12-374, 2014 WL 424156, at \*8 (D. Me. Feb. 4, 2014)](#) (Singal, J.) (holding that an ALJ was allowed to consider the claimant's ability to interact successfully with doctors in evaluating his social functioning).  In addition, the ALJ observed Debaker's social abilities first-hand during the arguably more stressful setting of an administrative hearing on the merits of his application.  As such, the court cannot fault the ALJ for finding a moderate limitation in this area and finds that a reasonable mind could accept the evidence before the ALJ as adequate to support the ALJ's conclusion.

Eighth, Debaker asserts simply that "[t]he ALJ cited no records or testimony to support" her finding of "moderate

---

[27] See, e.g., Admin. R. at 360 ("it's been a pleasure to see how he has matured into a kind, compassionate and polite young man"); id. at 361 ("Ethan, as always, was very polite and respectful").

limitations in concentrating, persisting, or maintaining pace."[28] As noted above, Debaker failed to develop this argument by failing to explain why the ALJ's finding was in error. Regardless, the ALJ clearly supported this topic-sentence conclusion with the subsequent verbiage in her decision referencing Debaker's mental status examinations. Debaker also challenges these very subsequent findings as his ninth argument on appeal, discussed immediately below.

Ninth, Debaker asserts that the ALJ erred in finding "he is consistently fully oriented and cognitively intact" and has "sufficient attention/concentration abilities to work at an appropriate and reasonable pace while completing tasks in a timely manner" because the two pages of education records cited by the ALJ conflict with other educational records evidencing asocial or impulsive behaviors.[29] This does not constitute a reversible error. Again, it is the ALJ's province, not the reviewing court's, to resolve conflicts in the evidence. See Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). Reversal is warranted only if the ALJ committed a legal or factual error in evaluating plaintiff's

---

[28] Pl. Mot. to Reverse Mem. (doc. no. 7-2) at 5 (quoting Admin. R. at 16).

[29] Pl. Mot. to Reverse Mem. (doc. no. 7-2) at 5 (quoting Admin. R. at 16).

claim, or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ. Roman-Roman, 114 Fed. Appx. at 411. Here, the ALJ's finding is supported by the opinion of Dr. Coyle, who after considering Debaker's extensive educational record, similarly determined that Debaker has no more than a moderate limitation in concentrating, persisting, or maintaining pace.[30] Although other non-expert statements in the record describe Debaker as engaging in abnormal behaviors, it is unclear (and never stated clearly by Debaker) how these behaviors would compel a finding that he has more than a moderate limitation in this area. Accordingly, the ALJ's finding must be upheld.

Tenth, Debaker challenges the ALJ's finding that "vocational testing documents showed that all [Debaker's] aptitudes were within normal ranges," as no expert opined as to whether his results were within normal ranges.[31] The testing documents provided that "[s]cores between 80 and 120 can be thought of as 'in the average range,'" and Debaker's scores all fell within this range.[32] An expert opinion was not necessary to

---

[30] Admin. R. at 69.

[31] Pl. Mot. to Reverse Mem. (doc. no. 7-2) at 5-6 (quoting Admin. R. at 119).

[32] See Admin R. at 271 (describing test results and displaying a diagram showing how Debaker's results compared to the average range).

make common sense judgments about such clearly explained test results. See Manso-Pizarro, 76 F.3d at 17. As such, the above finding does not constitute a reversible error.

Eleventh, Debaker contends that there is inadequate evidence in the record to support the ALJ's findings about his ability to perform simple work tasks on a consistent basis.[33] Although Debaker is correct that some of ALJ's minor findings lack clear support in Debaker's hearing testimony (e.g. no testimony that he can order a pizza), the ALJ's broader determination about Debaker's ability to perform simple level job tasks still remains supported by substantial evidence in the record. Of particular note, Dr. Coyle also opined that Debaker could sustain attention and concentration for simple tasks and maintain effort for two-hour periods over the course of an eight-hour workday and standard work week.[34] Moreover, Debaker's testimony about his actual daily activities, such as giving his dog daily insulin shots, supports the ALJ's ultimate determination that his functionality was greater than initially

---

[33] Pl. Mot. to Reverse Mem. (doc. no. 7-2) at 5-6 (quoting Admin. R. at 19 ("[Debaker] can cook and take care of his dogs, including administering an insulin shot on a daily basis. He can mow the lawn, order a pizza, shoot firearms and operate a weed whacker, demonstrating his ability for simple level job tasks.")).

[34] Admin. R. at 71.

alleged.[35] See Waitt v. Astrue, No. 11-10569, 2012 WL 2343440, at *14 (D. Mass. June 19, 2012) (Woodlock, J.) (explaining that while daily activities do not themselves show an ability to work, they can be used to support credibility determinations about a claimant's ability to concentrate and follow through on tasks).

Debaker also asserts that the ALJ erred by discounting his mother's non-medical opinions due to concerns about her being an "entirely objective reporter."[36] Further, he advances that the ALJ should have credited his mother's testimony just as she would credit the testimony of a treating physician because his mother has known him for all of his life. Debaker cites no authority for such a bold proposition. Regardless, his proposal is easily rejected. Social Security regulations require administrative law judges to credit treating physician opinions to the extent they are supported by objective medical evidence and are consistent with the record as a whole. See 20 C.F.R. § 404.1527(c). Although "non-medical sources may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function," such opinions

---

[35] Id. at 19.

[36] Pl. Mot. to Reverse Mem. (doc. no. 7-2) at 6 (quoting Admin. R. at 20).

16

"must be reasonably consistent with the longitudinal medical record and supplied by objective findings."[37] Here, the ALJ specifically found that there was "little objective support for the significant limitations" to which his mother testified.[38] As such, the court cannot fault the ALJ for questioning the neutrality of a family member who may stand to benefit from a finding of disability, see Tremblay v. Sec'y of Health and Human Servs., 676 F.2d 11, 13 (1st Cir. 1982), or for finding that the mother's lay medical opinions should not trump those of Dr. Coyle – a qualified medical expert.

Lastly, Debaker challenges the ALJ's RFC finding, asserting that there was no substantial evidence supporting her finding that "[d]ue to symptoms, persistence and pace would be diminished but productivity would not be more than 10 percent below the norm." Again, Debaker points to no evidence in the record suggesting otherwise. As such, this argument is rejected. Regardless, Dr. Coyle's mental RFC assessment, which

---

[37] Admin. R. at 20; see also 20 C.F.R. § 404.1529(c)(3) ("Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . in reaching a conclusion as to whether you are disabled.").

[38] Id.; see also 20 C.F.R. § 404.1527(c).

thoroughly assessed Debaker's sustained concentration and persistence limitations, supports a finding that Debaker experienced a minimal drop in productivity over the course of a standard work week that was within acceptable pace and persistence standards.  As such, neither the RFC finding nor the eleven other factual issues raised by Debaker warrant reversal or remand.

## IV. Conclusion

In sum, none of the eleven factual findings cited by Debaker constitute an error warranting reversal or remand of the ALJ's disability decision.  The court therefore denies his motion to reverse[39] and grants the Acting Commissioner's motion for an order affirming its disability insurance benefits decision.[40]  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_Joseph N. Laplante_
Joseph N. Laplante
United States District Judge

Dated:  August 27, 2019

cc:  Leslie C. Nixon, Esq.
    Luis A. Pere, Esq.

---

[39] Doc. no. 7.

[40] Doc. no. 8.